Cohcock, J.,
dissenting, delivered the following opinion :
I do not deem it necessary, in this case, to go at length into a consideration of the important question ; because I gave no opinion on it in the case of Rose v. *Daniel, and have no reason to be dissatisfied with it. Indeed, after the great display of talents, which has been made to overturn that case, my opinion is strengthened and confirmed. I will only remark, that in many instances, we have departed from the strict rules of the common law, because they were found to be inapplicable to the state of things here ; and in no instance would a departure be more warrant-able (if the principles of the English law are applicable, and do decide what is contended for,) than in this. I take it to be clear law, that the *186 statute does not begin to run in England, until a disseisin, in a country where every man is in possession of his land ; he then must have notice of the opposing claim, and afterwards he is allowed twenty years to make his entry. But it may be asked, what will at this day be considered a disseisin ? The definitions in the books, though very imperfect, savor often of that which was originally an actual disseisin, in spite of the owner. Littleton defines disseisin, with an, &c. “Where a man enters into lands, or tenements, where his entry is not congeable, and ousteth him that hath the freehold, &c.” The comment says, “ every entry is no disseisin, unless there be an ouster of the freehold.” Runnington on Ejectments, 53. But the meaning is sufficiently explained for my purpose in page 60, of the same authority. “ There must be an adverse possession, in order to enable the statute to run. In short, there must be a disseisin, and that strictly proved ; for the statute never runs against a man, but where he is actually ousted or disseised.” Now if a man have notice of an opposing claim, and] he fail to prosecute his claim, it would not be so unreasonable, that his heirs should be barred by the adverse possession. But here a person may go into possession of another’s land, and the period by which he may acquire a right is so short, that it may run out before the owner knows of it; and it has been held, that any possession, without the consent of the owner, is adverse. Thus, an important part of system of the English doctrine is destroyed, while *anotherpart of it is preserved; to me, it appears like building a superstructure without a foundation. But I am satisfied, that it is not the doctrine of the English law, that when the statute begins to run against the ancestor, it shall continue against the infant heir. This point has been agitated for several years in this State, and no ease has been yet produced, in which the question is decided in England on the statute of James, which is the analogous statute to ours. The case is supported by mere dicta, which, when examined, will be found to contradict the doctrine, which it is said they support. The doctrine in Runnington, p. 61, is uniformly resorted to as authority. I will therefore show, that no reliance should be placed on it, and that it does not support the defendants. “ In general, as to the operation of the statute of limitations, it should be remembered, that when any of them has begun to operate, no subsequent disability, viz. : insanity, infancy, marriage, or imprisonment, &c., (for which they almost uniformly provide) will impede its progress.” “ From the terms of the statute of fines, the uniform construction of all the statutes of limitations, and from the generally received opinion of the profession on the subject, the principle ought not to be disturbed. It would be mischievous to refine on the subject, or to make any distinction whatever between voluntary and involuntary disabilities. In both cases, when the disability is once (in italics) removed, the statutes attach and the sentence concludes by saying, the point was settled “in the case of the Count Duroure v. Jones.” Now, although the first part of the jiaragraph is general, yet, when we revert to the latter part, wherein he says, “ when the disability is once removed, that the statutes attach,” it is obvious that he means to speak of cases where the statute has begun to run against one claiming under any of the disabilities ; and such is the case of the Count Buroure. The statute began its operation against him, while an infant, and he failed, when the disability was removed, to make *187 his entry, but contended that, because of a subsequent disability, (viz.: ^imprisonment,) he should have further time. This meaning is further evinced, by the use of the word “ subsequent disability.” That is, a disability which exists subsequent to the one when the statute commenced its operation. The same author, in page 47-8, in speaking of the right of entry, says, “ where the wrong-doer (or disseissor) dies seized of the lands, then his heir advances one step further towards a good title; he hath not only a bare possession, but also an apparent jus possessions, or right of possession. For the law presumes, that the possession which it transmitted from the ancestor to the heir, is a rightful possession, until the contrary be shown ; therefore, the mere entry of A. is not allowed to evict the heir of B., but A. is driven to his action at law, to remove the possession of the heir ; though his entry alone would have dispossessed the ancestor. So that, in general, it appears that no man can recover possession by mere entry on lands which another hath by descent. Yet, this rule hath some exceptions, wherein the reasons cease upon which the general doctrine is grounded ; especially if the claimant were under any legal disabilities, during the life of the ancestor, either of infancy, &c., in all which cases, there is no neglect or laches in the claimant, and therefore no descentshall bar or take away his entry.” Hence, it appears, that where the claimant was under the disability of infancy, during the lifetime of the ancestor, he might have entered upon the heir of a disseisor ; a fortiori on the disseisor, himself. I think this goes falto show, that the doctrine contended for is not supported even in England. The first part of the sentence is quoted, not as having any direct application to the point in dispute, but to show the meaning of the entire sentence, wherein he recognizes the protection to infants, for which I contend. In Mr. Christian’s notes on Blackstone, 3 vol. 307, note 9, it is said, “ and the limitation of the statutes shall only commence from the time when their respective disabilities and impediments are removed.” Having examined all the cases quoted from the English books, in my opinion, in the case of Rose v. *Daniel, and shown, as I conceive, that they do not support the position contended for, as applicable to a case like the present, I shall not advert to them again. But I repeat, that the case does not depend on any English authorities. It must be decided by the construction of our own statute, which, in my judgment, is too widely different from the statute of James, to admit of the same construction But the law on this subject has been settled in the ease of Rose v. Daniel; and it was settled by four out of six judges, and therefore cannot be overruled by the opinions of three, (admitting that the presiding judge has a right to an opinion.) That case is authority ; and the plaintiffs cannot be divested of their rights by the opinions of three judges, unless I am greatly mistaken in the principles on which this Court is established. I would not be understood, as saying that the decisions of the Court should not be reviewed. I do not contend for any thing like infallibility. The decisions of the most able judges in England have been reviewed, and some of them overturned, and no doubt with great propriety; and if they can err with all the advantages they possess, it would not be surprising, that we should do so without any of them. But in most of those cases, a great majority of the judges will be found to concur in the opinion, that there was error *188 in the doctrines, so overturned ; whereas, in this case, four out of seven of the judges, now on the bench, are of opinion that the statute of limitations does not bar the rights of the claimants; yet, by this decision, they are to be deprived of their rights.
Note. — See the case of Bose v. Daniel, reported at length in 3 Brevard’s Reports, 428, and 2 Tread. 549 ; and Qourdin Theus, 3 Brev. 153. R.
Davis, for the motion ; Bowie, contra.